**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-4050

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

  v.

EARL R. FULLER, JR.,

    Defendant - Appellant.

No. 12-4095

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

  v.

DAVID A. WHEELER, a/k/a Sampson,

    Defendant - Appellant.

No. 12-4110

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

  v.

SAMUEL LLOYD, a/k/a Sammy,

    Defendant - Appellant.

Appeals from the United States District Court for the Eastern District of Virginia, at Norfolk. Mark S. Davis, District Judge. (2:11-cr-00036-MSD-FBS-6; 2:11-cr-00036-MSD-FBS-3; 2:11-cr-00036-MSD-FBS-1)

Submitted: November 1, 2012    Decided: December 7, 2012

Before DUNCAN and DAVIS, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Patricia Palmer Nagel, THE LAW OFFICES OF PATRICIA PALMER NAGEL, PLC, Williamsburg, Virginia, for Appellant Earl R. Fuller, Jr.; Jason Alan Dunn, JONES, JONES & DUNN, PLC, Chesapeake, Virginia, for Appellant David A. Wheeler; Lance C. Hamm, LANCE C. HAMM, Houston, Texas, for Appellant Samuel Lloyd. Neil H. MacBride, United States Attorney, Alexandria, Virginia, Laura M. Everhart, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Following a jury trial in the United States District Court for the Eastern District of Virginia, the appellants, Samuel Lloyd, David Wheeler, and Earl Fuller, Jr., were convicted of conspiracy to distribute and to possess with the intent to distribute cocaine and marijuana, and numerous substantive offenses. On appeal, they challenge their convictions on numerous fronts. We affirm.

First, Fuller argues that the district court erred in failing to grant his motion to sever his case from that of his codefendants. We review a district court's decision to deny a motion to sever for an abuse of discretion. United States v. Singh, 518 F.3d 236, 255 (4th Cir. 2008). While severance of trials for defendants named in the same indictment is permitted if joinder "appears to prejudice a defendant," Fed. R. Crim. P. 14, joint trials of defendants who are indicted together are preferred. Zafiro v. United States, 506 U.S. 534, 537 (1993). In a conspiracy case, joinder is particularly favored. United States v. Montgomery, 262 F.3d 233, 244 n.5 (4th Cir. 2001). Accordingly, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539. In other words, a

district court abuses its discretion "only where the trial court's decision to deny a severance deprives the defendants of a fair trial and results in a miscarriage of justice." United States v. Harris, 498 F.3d 278, 291 (4th Cir. 2007) (citation and internal quotation marks omitted).

The record here supports the district court's decision to deny the motion for severance. Having been indicted together with his codefendants, Fuller has not demonstrated a strong showing of prejudice from a joint trial as required for severance under Rule 14. United States v. Mir, 525 F.3d 351, 357 (4th Cir. 2008). Fuller's concerns about the relative culpability of himself and about the nature and quantity of the evidence against each respective defendant simply does not rise to the level of a miscarriage of justice.

Second, the appellants contend that the district court erred when it failed to grant a mistrial sua sponte once it became known that a government witness, Clive Black, spoke to Lloyd's attorney, Paul Watson, IV, prior to Black's trial testimony. Because the appellants did not move for a mistrial below, we review the district court's decision not to declare one sua sponte for plain error. United States v. Castner, 50 F.3d 1267, 1272 (4th Cir. 1995). Plain error occurs when there is (1) an error, (2) which is plain and obvious under existing law, (3) which is so prejudicial as to affect the outcome of the

proceedings, and (4) which seriously affects the fairness, integrity, or public reputation of the proceedings. United States v. Hanno, 21 F.3d 42, 45 (4th Cir. 1994).

In this case, the appellants cannot meet the plain error standard. The district court conducted a thorough and careful colloquy with counsel on two occasions concerning Black's alleged statements to Watson. After these lengthy colloquies, the appellants accepted the government's offer to stipulate that Black had made the statements described by Watson. Once the attorneys accepted the government's stipulation, the district court was under no obligation to order a mistrial sua sponte. The stipulation was a reasonable solution that allowed the defendants to further impeach Black's testimony. There was no error, let alone plain error.*

---

* Fuller and Lloyd claim they received constitutionally ineffective assistance of counsel when their respective attorneys failed to move for a mistrial once it became known that Black spoke to Watson. To prove a claim of ineffective assistance of counsel, a defendant must show (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). With respect to the first prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. In addition, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. We will address a claim of ineffective assistance on direct appeal only if the attorney's ineffectiveness conclusively appears on the record. United States v. Baldovinos, 434 F.3d 233, 239 (4th Cir. 2006). Otherwise, such claims are more properly raised in a motion filed pursuant to 28 U.S.C. § 2255. Our review convinces us
(Continued)

The appellants next challenge the sufficiency of the evidence of their conspiracy convictions. We review the sufficiency of the evidence to support a conviction by determining whether there is substantial evidence in the record, when viewed in the light most favorable to the government, to support the conviction. United States v. Jaensch, 665 F.3d 83, 93 (4th Cir. 2011) Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt. United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).

In the conspiracy count, the appellants were charged with conspiracy to distribute and to possess with the intent to distribute cocaine and marijuana. To obtain a conviction for a drug conspiracy, the government must prove the following elements: (1) an agreement between two or more people to distribute the drug or possess it with the intent to distribute; (2) the defendant's knowledge of the conspiracy; and (3) his knowing, voluntary participation in the conspiracy. United States v. Green, 599 F.3d 360, 367 (4th Cir. 2010). A defendant

---

that ineffective assistance does not conclusively appear on the face of this record, and, therefore, we decline to address this claim on direct appeal.

may be convicted of conspiracy without knowing all of its details and even if he plays only a minor role. Id. at 367–68; Burgos, 94 F.3d at 858.

In this case, there is sufficient evidence to support the appellants' conspiracy convictions. The government's evidence at trial established that, in 2005 or 2006, Lloyd called Black, whom he had known since their early lives in Jamaica. Lloyd stopped in Chesapeake, Virginia, where Black lived, on his way back from Baltimore, Maryland to his home in Atlanta, Georgia. Lloyd told Black that he had cocaine to sell and suggested that Black come to Atlanta to purchase some of it. Thereafter, Black and his friend, Mario Woods, went to Atlanta several times, purchasing multi-kilogram quantities of cocaine from Lloyd and his associates on each occasion.

On July 24, 2006, Cyntenious Morris was released from prison. Morris ran into Fuller, whom he had known since childhood. Fuller offered to assist Morris in reestablishing himself in the drug distribution business. Morris began buying half-ounces of cocaine from Fuller, but then began buying larger quantities. Sometime in 2008, Morris thought that the prices that he was paying were too high. Fuller then agreed to introduce Morris to Fuller's source of supply, Trenton Hawkins, so that Morris could negotiate a lower price. Thereafter, Morris bought cocaine from Hawkins, always placing his order

with Fuller, who delivered the cocaine to Morris on all but one occasion.

Hawkins was obtaining the cocaine from Michael Cromwell. His biggest customers were Black and Fuller. The cocaine was transported from Texas to Virginia using commercial trucks owned by Hawkins. This continued until June 7, 2009, when Hawkins was stopped by police in Mississippi while on his way to Texas. The police confiscated approximately $700,000.00 that Hawkins had intended to use to purchase cocaine. After the stop, Hawkins introduced Fuller to another supplier since Hawkins was getting out of the business.

Hawkins' trucking services were also used by Lloyd. In late 2007 or early 2008, Lloyd called Black and told Black that he and Michael Daugherty were looking for a truck driver to transport marijuana from Texas to Virginia. Black asked his friend Lewis Scott if he knew of anyone who could do this, and Scott introduced Black to Hawkins. Black, in turn, introduced Hawkins to Lloyd and David Wheeler, who hired Hawkins to transport 1,700 pounds of marijuana from El Paso to Virginia, for which Hawkins and Black were paid a total of $70,000.00.

In July 2008, Hawkins and a driver took Hawkins' tractor-trailer to El Paso, where they rendezvoused with Lloyd, Wheeler, and some Mexicans. In El Paso, they picked up a trailer packed with the marijuana hidden under a false floor and covered by a

load of watermelons. The truck was driven to Norfolk, Virginia followed by Lloyd, Wheeler, and the Mexicans. The watermelons were unloaded in Norfolk, and the truck was taken to Hawkins' trucking yard in Portsmouth, Virginia. The marijuana was removed by Hawkins, Black, Lloyd, Wheeler, Daugherty, Scott, and Robert Napier. The marijuana was stored at Scott's house, in several storage units, and at a house on Barkleaf Drive in Virginia Beach, Virginia. Fuller later told Johnnie Cowan about this 1,700 pound shipment of marijuana.

The house on Barkleaf Drive was used to store drugs and money, as a distribution point, and as a place for Lloyd and Wheeler to stay when they were in town from Atlanta and Texas. Andre Todd was allowed by Black to stay at the house on Barkleaf Drive after Todd was released from jail on September 4, 2008. Todd observed thousands of pounds of marijuana and up to ten kilograms of cocaine being stored there.

When a shipment of drugs arrived in Virginia, Wheeler or Lloyd would also arrive. They would collect the proceeds from the sale of the drugs as the money came in.

On July 31, 2008, the Virginia Beach Police Department executed a search warrant at one of the storage units rented by Black to store some of the marijuana and recovered 212 pounds of marijuana. Wheeler, Daugherty, and Black had brought the marijuana to this Virginia Beach unit. When Black learned of

the police activity, he enlisted the aid of Simuel Hinton and Ronald Nunn, and they removed 400 pounds of marijuana from another storage unit.

In addition to using tractor-trailers, members of the conspiracy used cars and trucks to transport cocaine, marijuana, and cash. These vehicles included three Ford F-150 pickup trucks, one gray/black and the others red. If the loads arrived during the day, they would use the attached garage at Black's house in Chesapeake, Virginia to unload the contraband. They usually rendezvoused at a strip shopping center near Black's home before going to the house. The trucks were driven by Wheeler, Daugherty, and Napier. The trucks had secret compartments that were fitted into the taillights and opened hydraulically.

In May 2009, a series of telephone conversations on Black's phone were intercepted pursuant to a court-ordered wiretap. On May 16, 2009, Black and Lloyd discussed marijuana deals. Lloyd was in Maryland at the time. On May 21, 2009, Black told Lloyd that Napier wanted to transport marijuana from Arizona. They also discussed setting up a 1,000 pound marijuana transaction between Todd and Lloyd's Baltimore associates.

On May 23, 2009, a meeting took place in Virginia Beach involving Lloyd, Black, Todd, and the Baltimore associates.

They discussed Todd purchasing the marijuana. No agreement was reached.

On June 1, 2009, Lloyd again was in Baltimore. He and Black again spoke of Mexico and Arizona. On June 4, 2009, Lloyd flew into the Phoenix, Arizona airport. He was approached by Detective Donald Gabrick of the Phoenix Police Department after acting suspiciously while claiming his luggage. Lloyd eventually consented to a search of his luggage, and Detective Gabrick found $100,530.00 concealed in the lining of Lloyd's suitcase, for which Lloyd had no plausible explanation. Detective Gabrick also recovered two used boarding passes and other documents indicating that Lloyd had flown from Baltimore to Phoenix on May 19 and May 28. Lloyd later told Black that he had lost $100,000.00 belonging to his Baltimore associates while he was in Arizona.

In July 2009, Lloyd called a friend, Bruce Heyward, in Atlanta who owned a trucking company. This was shortly after Hawkins was stopped in Mississippi while on his way to Texas with nearly $700,000.00. Unbeknownst to Lloyd, Heyward had been arrested and was cooperating with law enforcement. Lloyd wanted Heyward to transport marijuana from Texas to Virginia, Baltimore, and Washington, D.C. Heyward recorded a series of telephone calls at the direction of agents, and Heyward eventually set Lloyd up with an undercover agent, who continued

negotiations with Lloyd regarding price and quantity.  This continued through September 2009.  Lloyd mentioned marijuana loads of up to 4,000 pounds originating in Arizona and Houston, Texas.  Nothing was ever agreed upon.  The last contact between the undercover agent and Lloyd occurred on June 8, 2010, when Lloyd tried again to arrange a meeting in Arizona to further discuss transporting marijuana.

By this time, Black had been approached by agents and was cooperating in the investigation.  In July 2009, Lloyd and his Baltimore associates came to Virginia looking for an individual who owed them money for a $200,000.00 drug debt.  Black alerted the agents, and a violent confrontation was averted.

The evidence summarized above is sufficient to support the appellants' conspiracy convictions.  Reduced to its essence, the appellants' challenge to these convictions rests on an attack on the credibility of the government's witnesses, but the jury resolved the credibility issues in favor of the government.  As an appeals court, we cannot review the credibility of these witnesses.  United States v. Foster, 507 F.3d 233, 244–45 (4th Cir. 2007).

The appellants raise other arguments which they contend should be resolved in their favor.  We have reviewed these arguments and find them to be without merit.  Accordingly, the judgments of the district court are affirmed.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED