1  Mr. Black testifying to a weapon, or two incidents of a weapon,

2  and we have the jury rejecting that testimony on a beyond a

3  reasonable doubt.  So now the court sits in judgment on the

4  lesser standard of preponderance of the evidence.  Would submit

5  to the court this is -- well, first, I don't, certainly don't

6  disagree with the law that the court quoted.  It is a different

7  inquire, a lesser standard that the court is using today than

8  the jury used.  But would just ask the court to keep in mind

9  that the jury certainly rejected Mr. Black's testimony under a

10  higher standard, and that it is certainly a difficult issue

11  because it's -- probably sit here all day and talk about the

12  difference between beyond a reasonable doubt and preponderance

13  of the evidence.  It's just very hard to articulate exactly what

14  the difference between the two is.  Or at least the exact

15  difference between the two.  And since the jury rejected

16  Mr. Black's testimony under the higher standard, I would

17  certainly ask the court to view his testimony with doubt as to

18  the truthfulness and not apply the two-point enhancement.

19          THE COURT:  Okay.  Ms. Everhart, when I look at

20  Page 1030, 1031 of the transcript and it talks about going to

21  the hotel, this is Mr. Black's testimony, and it says "We drove

22  and we went off Battlefield Boulevard to the Hampton Inn and

23  Sammy rented a room, and says, "Did Sammy tell you why he was

24  renting a room at the Hampton Inn when he already had a room at

25  the Fairfield Inn?

1          "Answer:  Because the police was following behind us.

2          "And after you get to the Hampton Inn, what happens?

3          "Went there, went upstairs, we was in the room, he

4  gave me

5          "He is who?

6          "Me and Sammy.  He gave me a gun wrapped up in one of

7  the towels from the hotel.

8          "Question:  What did he tell you if anything about the

9  this gun?

10          "He told me that it was the big guy's begun, and for

11  me to get rid of it.

12          "Now in the course of this, did you ever find out how

13  much money was owed for this marihuana?

14          "I think it was over 200."

15          Your argument before was that the government -- the

16  jury could have done two things:  One was found that it wasn't

17  in furtherance, Mr. Lloyd didn't possess the gun in furtherance

18  of a drug crime, right?

19          MS. EVERHART:  Yes.

20          THE COURT:  And I think you may have said

21  nullification?  Or maybe it was Mr. Watson?

22          MS. EVERHART:  I don't think that it was me.

23          THE COURT:  Okay.

24          MS. EVERHART:  But I've certainly had cases where a

25  defendant was charged with being a felon in possession of a

1 firearm and possession in furtherance of a drug trafficking

2 crime, found guilty of being a felon in possession and not

3 guilty on the 924(c).  So I don't think that one can jump to the

4 conclusion that the jury did not believe that he possessed the

5 weapon.  And furthermore, he doesn't even have to possess it

6 under the guidelines, it's a question of whether the gun was

7 present during the commission of the offense and it's not

8 clearly unrelated to the offense.

9             THE COURT:  Clearly they were trying to collect a drug

10 debt.

11            MS. EVERHART:  Yes.

12            THE COURT:  At some point he came to know of the gun.

13 We don't know necessarily when.  But at some point he did.

14            MS. EVERHART:  Yes.

15            THE COURT:  Gave it to Black.

16            MS. EVERHART:  Yes.

17            THE COURT:  In this instance.

18            Earlier we have him present in July of 2009 as

19 reflected in Paragraph 39 with CW-15 and 16.

20            All right?  Anything else on this issue from either of

21 you?

22            MS. EVERHART:  No, sir.

23            MR. WATSON:  No, sir.

24            THE COURT:  Again, it's a preponderance of the

25 evidence standard, and the fact is that the jury did not find

103

```
1   Mr. Lloyd guilty beyond a reasonable doubt of possession of a
2   gun in furtherance of a drug trafficking crime.  But we have
3   these two separate incidents where Mr. Lloyd was with and
4   participating with those trying to collect the drug monies and
5   was clearly, at the very least, aware at some point of the
6   presence of a gun.  And so I think that it meets the standard
7   for the gun enhancement, which is a two-level enhancement.  And
8   so that objection is overruled.
9           All right.  Ms. Sullivan, where does that bring us?
10          PROBATION OFFICER SULLIVAN:  Okay.  Your Honor, based
11  on the changes that were made to some of the drug quantity
12  calculations, the base offense level is now a 36, with the
13  enhancement for role at a plus three, the enhancement for the
14  gun at a plus two, brings us to a total offense level of 41 with
15  a criminal history category of 1, with the guideline range of
16  324 to 405 months.
17          THE COURT:  All right.  I know both of you disagree
18  with many of my rulings, but Ms. Everhart, is that an accurate
19  calculation based upon where we are with the rulings?
20          MS. EVERHART:  I believe so, Your Honor.
21          THE COURT:  Mr. Watson?
22          MR. WATSON:  Yes, sir, it is.
23          If I could inquire as to the total drug weight though?
24  I do agree it's within that range, I just didn't know the exact
25  final amount.
```

Paul L. McManus, RMR, FCRR Official Court Reporter

1           PROBATION OFFICER SULLIVAN:  Well, assuming that my

2   math is correct, I have a total drug weight of

3   12,453.3708 kilograms of marihuana.

4           MR. WATSON:  Close enough to mine.

5           PROBATION OFFICER SULLIVAN:  Okay.

6           THE COURT:  Okay.  The statutory ranges of

7   imprisonment for the counts of which the defendant has been

8   found guilty are as follows:  Count 1, less than 10 years, no

9   more than life; Counts 5 and 6, not less than five years, no

10  more than 40 years; Count 26, not more than five years.

11          As for supervised release -- hold on a second.

12          As for supervised release, Count 1 requires a period

13  of supervision of at least five years; Counts 5 and 6 require a

14  period of supervision of at least four years, and Count 26

15  includes a period of supervision of at least two years.  Unless

16  somebody speaks up I'm going to assume you all agree that those

17  are the applicable provisions.

18          MS. EVERHART:  Yes, Your Honor.

19          MR. WATSON:  Yes, sir.

20          THE COURT:  All right.  Is there any additional

21  evidence?  I take it -- I see nobody else here to testify, so I

22  assume there is none.

23          MR. WATSON:  No, sir, no additional evidence from the

24  defendant.

25          MS. EVERHART:  No additional evidence, Your Honor.

1        THE COURT:  Okay.  I'm happy to hear from you, Ms.

2  Everhart.

3        MS. EVERHART:  Your Honor, Mr. Lloyd was involved in

4  the distribution of massive quantities of drugs in the Eastern

5  District of Virginia.  He was the architect of many of the deals

6  and was responsible for making sure other people stayed involved

7  in all of this activity too.  This was not a one-shot deal.

8  This at this time over many, many years with Mr. Lloyd involved.

9  He says that he had other business interests and things of that

10  nature, but it seems clear to me that the amount of time that

11  was being devoted to drug smuggling and distribution was taking

12  up most of his time.

13        The defendant has not, of course, accepted

14  responsibility.  He went to trial, as was his right.  But the

15  first step toward making amends for having committed crimes and

16  for evil-doing is to admit that you've done it and move on from

17  there, and that Mr. Lloyd has not done in this case.

18        He profited, it would seem to me, very handsomely from

19  this, although certainly law enforcement managed to get their

20  hands on quite a bit of the money generated by this conspiracy.

21  And certainly as we've seen in the case of Mario Woods and this

22  other gentleman that we just discussed, some people did not

23  always pay their debts the way that they should have.  There

24  were very large amounts of money involved in this.

25        And when one looks at the similarly situated

1    co-defendants in this case I would say probably the person

2    that's most in line with Mr. Lloyd, even though he was really

3    sort of a Lloyd recruit, would be Trent Hawkins.  Now,

4    Mr. Hawkins had a much more extensive criminal history than

5    Mr. Lloyd did.  But if you take a look at some of these others,

6    for example, Michael Cromwell had a higher criminal history

7    category, but he was also directing activities and things like

8    that.

9         I think when one looks at this group, if you look at

10   the related cased, they range from a low of 70 months for one of

11   the individuals, Mr. Nunn, I believe, but he had no criminal

12   history he was eligible for the Safety Valve, and then it goes

13   all the way up to a high for Mr. Fuller who ended up getting

14   life, and everybody else in between, including Mr. Hawkins and

15   so forth, that one of the factors under 3553(a) is disparity of

16   sentencing between one defendant and another.  And I think, in

17   looking at the hierarchy in this case, that a sentence within

18   the guideline range is appropriate for Mr. Lloyd.

19        THE COURT:  Thank you, Ms. Everhart.

20        Mr. Watson?

21        MR. WATSON:  We would certainly acknowledge several

22   aggravating factors in this case, such as the quantity of drugs,

23   the gun with the collection of the drug debt as alleged, the

24   telephone calls to Mr. Heyward and Mr. McKenna, no acceptance of

25   responsibility.  But of course Mr. Lloyd has been assessed

```
 1   points for all of these already, so they certainly don't call
 2   for any enhancement or any greater penalty than is called for by
 3   the guidelines.  The guidelines, I would submit to the court,
 4   have done a very good job of capturing each and every thing
 5   alleged that Mr. Lloyd has done.  Of course we've been through
 6   the quantity today at great length, and he got points for the
 7   gun, he certainly got additional drug quantities for the calls
 8   to Heyward and McKenna, and of course he didn't get any points
 9   for acceptance of responsibility.  I would submit to the court
10   that his guidelines are certainly substantial at the low end of
11   324 months.  He's 49 years old.  He has no record whatsoever.
12   Certainly remarkable to be that age with no record facing this
13   type of sentence having been found guilty of these type of
14   charges.
15            Relative to the other defendants, his guidelines are
16   certainly at the high end.  Of course Mr. Fuller got life
17   because of two previous drug distribution convictions, and it
18   was not necessarily because of the allegations in this case, but
19   because of his two previous convictions he got life.
20            Several others in this case got somewhere around 20
21   years, less than 20 years, maybe a little bit more than 20
22   years, but that seems to be kind of the mean of what has
23   happened to the various defendants in this case.
24            Oftentimes in a federal case, the sentencing is the
25   most involved part of the case.  Certainly we've been here for a
```

1 while today, but the trial was much more involved than this, and

2 I don't need to enlighten the court on every allegation or what

3 every person said during the trial, because unlike a guilty

4 plea, the court's heard at great length what all the witnesses

5 had to say.  I'd just point out that everything has been

6 provided for in the guidelines.  Mr. Lloyd has gotten points or

7 months for every single thing, I would submit, that he did in

8 connection to this case, and would ask the court to consider

9 sentencing him, considering his age, considering his medical

10 condition that was certainly set forth in the presentence report

11 and considering his lack of absolutely any record, any

12 convictions on his record, sentencing him to below the

13 guidelines.

14          The guidelines, of course, are advisory.  The court

15 does not have to sentence him to 324 months.  But would ask the

16 court to consider sentencing him more towards the mean of what

17 the other defendants in this case have received.

18          Of course we, I know the court still has David Wheeler

19 tomorrow, but -- or at least soon.  But consider sentencing him

20 more towards the mean.  But if the court is not inclined to do

21 that, to sentence him to the low end of the guidelines, which

22 certainly is a considerable sentence considering his age and

23 physical condition.

24          THE COURT:  Thank you, Mr. Watson.

25          Mr. Lloyd, you of course pled not guilty and went to

1  trial before a jury and were tried, and now you have the right

2  to make a statement if you wish to.  You don't have to, it's up

3  to you, but if you wish to make any statement before sentencing

4  takes place, now is the time to do that.  Do you wish to make a

5  statement?

6           THE DEFENDANT:  No, Your Honor.

7           THE COURT:  All right.  Is there any reason that

8  sentencing should not take place at this time, Mr. Watson?

9           MR. WATSON:  No, sir, no reason.

10          THE COURT:  The court is required by Congress to

11 review the statutory sentencing factors.  I've considered them

12 all, and I will talk about some of them as I go through the

13 presentence report.

14          We have certainly, today, reviewed much of this

15 transcript, and much from this case.  The presentence report

16 does reflect that the defendant's 49 years old.  And that when

17 we look at the offense conduct we're faced with offense conduct

18 over a period of numerous years from approximately 2004 or five

19 up until 2011.  The offense conduct descriptions at

20 Paragraphs 19, 20, 21, and so forth go through the activities

21 at, among other things, the Barkleaf Drive home in Virginia

22 Beach where these drugs were stored for distribution, the

23 distribution activities taking place from there, the various

24 others assisting in the distribution.

25          Mr. Lloyd, of course, was instrumental in setting up

110

 1 | this organization, obtaining drugs from various locations, and

 2 | then facilitating their distribution in cooperation with many

 3 | others.

 4 |          The presentence report goes through many of these

 5 | specific incidents of Mr. Lloyd's activities, and I'm not going

 6 | to specifically go through these numerous paragraphs because we

 7 | have really done so much of that today. But it does reflect,

 8 | and the court is required in factor No. 1 to consider, the

 9 | nature and circumstances of the offense. It does reflect that

10 | Mr. Lloyd was involved over a long period of time in acquiring

11 | large amounts of these illegal substances and distributing them

12 | and facilitating their distribution.

13 |          I frequently say, particularly when we have a lot of

14 | other people here in the courtroom, family or others that come

15 | to testify, I remind them that the introduction of these drugs

16 | is like injecting poison into somebody's veins. And that's

17 | exactly what happened year after year after year by what you

18 | did, Mr. Lloyd. You facilitated addictions by many, many

19 | people. You facilitated the breaking up of families of many

20 | people. It'll never be known how much damage the introduction

21 | of all of these substances caused. But once the addiction is

22 | created, of course, people want to get more money, they don't

23 | have money. They commit crime so they can find more money to

24 | buy more drugs. And it tears apart the community, it tears

25 | apart families, and it's simply a poison that is injected into

1    the veins of the community.  And it was something that you had

2    the opportunity to think about repeatedly.  You had many

3    years -- you had no criminal history.  You had many years to

4    think about what you were doing when you engaged in this

5    activity.  And apparently without any hesitance you continued to

6    engage in it.

7              You chose to go to trial.  You did not accept

8    responsibility for your conduct.  And that's your Constitutional

9    right.  But it also reflects something about your mindset here.

10             The presentence report goes on to reflect that you had

11   no prior adult criminal record.  And maybe that's -- I don't

12   know what that shows.  Maybe it shows that at least by the time

13   you engaged in this you were very good at what you were doing

14   and not being found out.

15             But it also reflects, of course, the fact that you

16   were not a native of this country, and that you left Jamaica in

17   1986, moved to Miami and then you spent some time in New York

18   and Baltimore -- excuse me, in New Jersey, and then in Baltimore

19   and then in Atlanta where you resided since 1999.  And in 2007,

20   in the midst of all of this activity, you became a naturalized

21   United States citizen.  You took advantage of the benefits that

22   this country had provided to you, and as I've said, you did it

23   to the detriment of many, many, many people.

24             The court does consider the hip replacement surgery

25   that you had in 1996 after being involved in a serious car

1  accident.

2          The court does consider the fact that you graduated

3  from high school in Jamaica and then you went on and received an

4  Associate's degree there in business and computers.  You could

5  have used this degree to much better service than you did here,

6  and it was obvious from what you were doing here for many years

7  that you had the capacity to be engaged in something that

8  contributed to the community.  A business.  You supposedly had

9  these other businesses that were engaged in, and yet you used

10  your time and education to run this illegal business over the

11  course of many years and taking advantage of your time here in

12  the United States.

13          Nonetheless, the court does also reflect upon the

14  positives.  I mentioned a few of them, but also I have here a

15  lengthy work history in various locations, and that's certainly

16  a positive that the court takes into account, considers.

17          You served in the Jamaican military from 1981 to 1984,

18  another very positive factor that the court considers when

19  looking at your background as reflected in the presentence

20  report.

21          The court considers your family, wife, your common-law

22  wife as recounted in Paragraph 61 in Georgia, and the child that

23  you have together.  And the court takes all of that into

24  consideration.

25          Having considered all of the statutory sentencing

1  factors, the court is prepared to impose sentence at this time.

2       Pursuant to the Sentencing Reform Act of 1984, it is

3  the judgment of the court that the defendant, Samuel Lloyd, is

4  hereby committed to the custody of the United States Bureau of

5  Prisons to be imprisoned for a term of 360 months.  The term

6  consists of 360 months on Count 1, 360 months on Counts 5 and 6,

7  and 60 months on Count 26, all to run concurrently.

8       Mr. Lloyd is remanded to the custody of the United

9  States Marshal to serve this sentence.

10       Upon release from imprisonment, Mr. Lloyd shall be

11  placed on supervised release for a term of five years.  This

12  term consists of five years on Count 1 and 5 and 6, and three

13  years on Count 26 to run, all of it, concurrently.

14       Within 72 hours of release from custody of the Bureau

15  of Prisons, Mr. Lloyd shall report in person to the probation

16  office in the district to which he is released, if he is

17  released.  While on supervision, he shall not commit another

18  federal, state or local crime, and shall not unlawfully possess

19  a controlled substance, and shall not possess a firearm or a

20  destructive device.

21       Mr. Lloyd shall comply with the standard conditions

22  that have been adopted by this court.  He shall also comply with

23  the following conditions:  He shall provide the probation

24  officer access to any requested financial information, and he

25  shall pay for support of his child in the amount ordered by any

114

1  social service agency or court of competent jurisdiction.   In

2  the absence of such order, payments are to be made on a schedule

3  to be determined by the court at the beginning of supervision

4  based upon Mr. Lloyd's financial circumstances.

5         Having considered Mr. Lloyd's net worth and all the

6  other factors in the case, the court finds he's not capable of

7  paying a fine; however, the court imposes a special assessment

8  of $400, which is $100 for each count.   No restitution is

9  imposed.   No fine is imposed, as I've said.

10         The special assessment is due in full immediately.

11  When supervision begins, the probation officer shall take into

12  consideration Mr. Lloyd's economic status as it pertains to his

13  ability to pay the special assessments ordered, and shall notify

14  the court of any changes that may need to be made.   The special

15  assessments may be subject to penalties for default and

16  delinquency.   Nothing in the court's order shall prohibit the

17  collection of any judgment or fine by the United States.

18         Because the judgment imposes a period of imprisonment,

19  payment of the monetary penalties is due during that period, and

20  they are to be made to the Clerk of this court, except those

21  made through the Bureau of Prisons Inmate Financial

22  Responsibility Program.

23         Mr. Lloyd shall notify the U.S. Attorney for this

24  district within 30 days of any change of name, residence or

25  mailing address until the special assessments imposed by the

115

1    judgment are fully paid.

2            Now, Mr. Lloyd, you have the right to appeal the

3    jury's verdict and the court's sentence.  If you wish to pursue

4    an appeal, you must file a notice of appeal within 14 days from

5    today.  If you do not file the notice of appeal on time, you may

6    lose your right to appeal.  You have the right to be assisted by

7    an attorney on appeal.  One will be appointed for you by the

8    court if you cannot afford to hire an attorney.  You may be

9    permitted to file the appeal without payment of the costs if you

10   make a written request to do so.  And if you make a request of

11   the clerk's office, someone there will prepare and file the

12   notice of appeal for you.

13           Mr. Watson, is there a request regarding the location

14   of incarceration?  Is Georgia the request?

15           MR. WATSON:  Yes, sir.

16           THE COURT:  Okay.  I will make a recommendation that

17   Mr. Lloyd be imprisoned as close to Georgia so that he can be in

18   touch with his family as is possible.

19           And Ms. Everhart, is there anything else that we need

20   to address today?

21           MS. EVERHART:  No, Your Honor.

22           THE COURT:  Mr. Watson?

23           MR. WATSON:  I'm not sure if this is something the

24   court does address, but Mr. Lloyd just asked me about...

25           (Counsel and defendant conferred.)

Paul L. McManus, RMR, FCRR Official Court Reporter

1          MR. WATSON:  He does have a medical situation with his

2     hip that needs to be attended to.  That is what he's telling me.

3          THE COURT:  Yes.  Mr. Lloyd, the Bureau of Prisons has

4     a process where they evaluate everyone when they come in.

5     Not -- you're in a local jail, obviously, now, I assume, but you

6     will be in a Bureau of Prisons facility, and you will be

7     screened when you come in and they'll evaluate your medical

8     condition in an effort to determine where you will be provided

9     with appropriate medical treatment.  And if there's some

10    conflict between that and the court's recommendation for

11    Georgia, then they will make that determination.  But I don't

12    have the authority to make any decision on all of that.  So it

13    will be taken into consideration.

14         Mr. Lloyd, you pled not guilty and went to trial here.

15    The court did not have as much information, perhaps, about you

16    personally as what sometimes I do when someone pleads guilty and

17    provides additional information.  But I will say this to you, as

18    I do to almost everyone that comes before me:  There's a lot

19    that we see here that's bad, but there's also, obviously, a lot

20    of good in everybody.  And so I certainly do hope that you're

21    able to make the most of your time while you're incarcerated,

22    and I certainly do wish you well.

23         (Whereupon, proceedings concluded at 4:28 p.m.)

24    ·

25

117

1                           *CERTIFICATION*

2

3          *I certify that the foregoing is a true, complete and*

4    *correct transcript of the proceedings held in the above-entitled*

5    *matter.*

6

7    _____

8                      Paul L. McManus, RMR, FCRR

9                           4/12/16

10                            Date

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Paul L. McManus, RMR, FCRR Official Court Reporter