UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA

v.                                              Criminal No. 2:11cr36

SAMUEL LLOYD,

     Defendant.

<u>MEMORANDUM ORDER</u>

This matter is before the Court on Defendant Samuel Lloyd's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) due to the COVID-19 pandemic. ECF No. 395. Defendant's motion alternatively requests that counsel be appointed to assist him in pursuing compassionate release and/or seeks a reduction in sentence to a term of home confinement. The Government filed a brief in opposition, ECF No. 405, and Defendant has not filed a reply brief. For the reasons stated below, Defendant's motion is **DENIED**.

**A. Compassionate Release Motion & Request for Counsel**

Pursuant to 18 U.S.C. § 3582(c)(1)(A), this Court has the authority to reduce a term of imprisonment when a federal inmate files a motion seeking "compassionate release" <u>after</u> exhausting administrative remedies through the Bureau of Prisons ("BOP"). 18 U.S.C. § 3582(c)(1)(A) (emphasis added).[1] Here, Defendant provides

---

[1] The First Step Act of 2018 amended such statutory provision to allow inmates to directly petition this Court for compassionate release; prior to 2018, the BOP had to initiate the motion in this Court.

evidence indicating that he filed a request seeking administrative relief through the Bureau of Prisons on April 20, 2020.  ECF No. 395-4.   The Government <u>does not challenge</u> the sufficiency of Defendant's efforts to exhaust his administrative remedies, instead arguing that Defendant's motion should be denied on the merits. ECF No. 405, at 11.  In light of Defendant's administrative request for compassionate release, and in the absence of a challenge by the Government, the Court will consider the merits of Defendant's motion.  However, for the reasons set forth in the Government's opposition brief, ECF No. 395, at 11-16, and for those set forth below, the Court finds that Defendant fails to demonstrate an extraordinary and compelling reason for compassionate release or that the § 3553(a) factors and/or public safety considerations favor compassionate release.

The Government does not appear to dispute the fact that Defendant, who is fifty-seven years old, has multiple medical conditions that place him at increased risk of serious illness from COVID-19, including type II diabetes, kidney disease, and hypertension.[2]   See   https://www.cdc.gov/coronavirus/2019-ncov/

---

[2] Portions of Defendant's sealed medical records appear to indicate that his kidney disease is in "remission," although other portions appear to reference ongoing kidney issues, and the Government has not argued that the reference to "remission" undercuts the COVID-19 risk for Defendant.  ECF Nos. 408-1, at 1; 408-4, at 6.  Additionally, pursuant to recent updates to CDC guidance issued after the Government filed its brief, hypertension is now a condition that "might" create an increased risk of severe illness from COVID-19 rather than a condition identified as creating such higher risk.  Defendant's medical records, however, also indicate that he has a history of heart disease.  ECF No. 408-4, at 6.  The Government contests Defendant's contention that he has

need-extra-precautions/people-with-medical-conditions.html   (last visited Aug. 4, 2020) (listing conditions that increase a person's risk of severe illness, as well as conditions that "might" increase a person's risk of severe illness); cf. https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Aug. 4, 2020) (indicating that the risk for severe illness from COVID-19 increases with age and that individuals in their fifties have some degree of increased risk).  The Government does, however, argue that these conditions are not "extraordinary" and should not support compassionate release, particularly because Defendant is housed at a BOP facility (FCI Jesup) that as of the time of the Government's filing, had no reported current or past cases of COVID-19 among inmates.

Subsequent to the Government filing its brief in opposition, FCI Jesup experienced a significant outbreak of COVID-19, with more than 250 inmates testing positive for COVID-19.   Cf. https://www.bop.gov/coronavirus/ (last visited August 4, 2020).  It is, however, unclear from BOP records whether those inmates were housed in FCI Jesup's medium security institution, the "camp," or the low-security satellite facility.  More importantly, however, the outbreak at FCI Jesup appears to have passed, as there are

_____

"COPD," highlighting the fact that nothing in Defendant's medical records supports such claim.  Defendant has not filed a reply brief pointing to any evidence of a COPD diagnosis.  Considering all of these facts collectively, Defendant has demonstrated an increased risk of severe illness.

3

currently only four inmates with positive COVID-19 test results, with 252 inmates having recovered.[3]  Id.  Although Jesup FCI has had one inmate fatality, such lone fatality represents a very low percentage of the total number of inmates that have tested positive at that facility.  Id.

Considering the confluence of Defendant's age, documented health conditions, and the current situation at FCI Jesup, this case presents a close call as to whether Defendant has demonstrated an "extraordinary and compelling" reason that could support compassionate release.  See United States v. White, -- F.  Supp. 3d --, No. 2:07cr150, 2020 WL 1906845, at *1 n.2 (E.D. Va. Apr. 17, 2020) (noting that "in the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility" (emphasis added) (quoting United States v. Feiling, No. 3:19cr112, 2020 WL 1821457 at *7 (E.D. Va. Apr. 10, 2020))).[4]  However, when considering the above facts in conjunction with the § 3553(a) statutory sentencing factors, the apparent risk

---

[3] Sixteen staff members are currently positive for COVID-19, although there is no indication that BOP is flouting its own screening protocols and allowing such individuals to work.

[4] Defendant has not offered any evidence documenting the specific conditions at his facility or otherwise provided an individualized assessment demonstrating why he is at an increased risk based on conditions/procedures at FCI Jesup.  That said, the BOP's publicly available information at a minimum establish that there was an increased risk during a COVID-19 outbreak, although such outbreak now appears to have been controlled.

to the public if Defendant were released, and whether Defendant has

been rehabilitated, accepted responsibility for his crimes, and has

an adequate release plan that would increase his prospects of

staying healthy and avoiding COVID-19, the Court finds that

compassionate release is not appropriate at this time.  See 18

U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a); U.S.S.G. § 1B.13; 18

U.S.C. § 3142(g).

> As explained by another judge of this Court:

> First, the [compassionate release] statute provides that
> the Court "may reduce the term of imprisonment."  18
> U.S.C. § 3582(c)(1)(A) (emphasis added). . . .

> . . . Congress explicitly chose to use the permissive may
> rather than the mandatory shall, and the Court will give
> effect to that choice, as it must. Indeed, the Fourth
> Circuit recently recognized the discretion afforded
> courts based in part on the word "may" in a separate
> provision of the First Step Act.  United States v.
> Wirsing, 943 F.3d 175, 186 (4th Cir. 2019) (citing First
> Step Act § 404(b), 132 Stat. at 5222). By using the word
> "may," Congress gave courts discretion when entertaining
> a motion to reduce a sentence under § 3582(c)(1)(A).

> Second, the statute provides that a court may reduce a
> sentence "after considering the factors set forth in
> section 3553(a) to the extent that they are applicable."
> 18 U.S.C. § 3582(C)(1)(A).  If a court only needed to
> determine the existence of "extraordinary and compelling
> reasons" and whether defendant had exhausted h[er]
> administrative remedies, courts would have no need to
> consider the factors in § 3553(a).  This would defeat the
> plain meaning of the section. . . .

United States v. Webster, -- F. Supp. 3d. --, No. 3:91cr138, 2020

WL 618828, at *5 (E.D. Va. Feb. 10, 2020) (internal citation

omitted).  Further supplementing the discussion in Webster, the

same statute that gives this Court discretionary authority to grant

a compassionate release motion after considering the § 3553(a) factors permits release only to the extent that it would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The relevant policy statement issued by the Sentencing Commission not only requires an analysis of the § 3553(a) factors, but it authorizes a reduction in a previously imposed term of imprisonment only if "the Defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13.[5]

Here, the nature and circumstances of Defendant's offense weigh against release at this time in light of the "need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a). The need to provide adequate deterrence for this Defendant, and the need to avoid unwarranted sentencing disparities, also weigh against Defendant's release. Importantly, although Defendant asserts that he has served more than half of his sentence, such claim is not supported by the

---

[5] The text of U.S.S.G. § 1B1.13 and the application note defining the phrase "extraordinary and compelling" have not been updated since the passage of the First Step Act to reflect an inmate's ability to directly petition the Court for compassionate release. The Court finds that § 1B1.13 and its application notes in their current form remain instructive and do not prohibit this Court from granting compassionate release, in the appropriate case, due to the risk created by the COVID-19 pandemic. See United States v. Rodriguez, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *4 (E.D. Pa. Apr. 1, 2020).

record.   Defendant   was   initially   sentenced   to   360   months imprisonment, with such sentence later reduced to 290 months due to a retroactive Guideline adjustment, but he has  been incarcerated for less than nine-and-a-half years.  Assuming Defendant continues to benefit from good behavior credits, he is not scheduled to be released until the end of 2031, meaning that Defendant has served less than half of his sentence even when sentencing credits are considered.   In the absence of such credits, and as argued by the Government, Defendant has served less than 40% of the modified sentence imposed in this case.  Cf. United States v. Scott, No. CR JKB-16-0429, 2020 WL 4041161, at *2 (D. Md. July 17, 2020) (finding that the absence of confirmed active COVID-19 cases at the Defendant's prison facility and the fact that he had served "only roughly 36 months of a 135-month sentence for a serious crime" outweighed the Defendant's medical conditions).

Similarly, while Defendant offers the statement in his motion that he has always accepted responsibility for his actions, ECF No. 395, at 4, Defendant did not plead guilty, nor did he accept responsibility at sentencing for his crimes or for his leadership role in a drug conspiracy responsible for large quantity cocaine and marijuana shipments.  As noted by the Court at sentencing, although Defendant had no criminal history prior to this offense, he engaged in the drug conspiracy over a period of time, while he was a mature adult, and he had numerous opportunities to reflect

on his ongoing illegal behavior and the negative impact it had on the community. Defendant was also attributed with a firearm at sentencing, a fact that further underscores the seriousness of his criminal conduct.[6] Cf. United States v. Moore, 769 F.3d 264, 270 (4th Cir. 2014) (noting various ways that drugs and guns create a dangerous combination, to include firearms operating "as an enforcement mechanism in a dangerous transactional business").

When considering the risk to the public, under both § 3553(a), and U.S.S.G. § 1B1.13(2) as informed by 18 U.S.C. § 3142(g), the nature of Defendant's drug trafficking crime, to include the multi-kilogram quantities of cocaine and marijuana involved, and the involvement of a firearm, weigh against a finding that releasing Defendant after he served less than half of his sentence would not create a danger to the community. Cf. 18 U.S.C. § 3142(g)(1) (listing a controlled substance offense as an aggravating consideration). Defendant's current BOP classification to a medium security prison facility further underscores the seriousness of his offense. ECF No. 395, at 10. The Court is also troubled by the fact that Defendant committed the instant offense while a mature adult, and has reservations as to whether Defendant would take steps to protect others in the community by diligently following

---

[6] As discussed at sentencing, trial testimony not only sufficiently linked a firearm to Defendant, but such testimony revealed that armed co-conspirators were traveling around town looking for an individual that owed a drug debt. ECF No. 270, at 16-18, 88-89, 93-99.

any applicable requirements regarding the need to quarantine, wear a mask, and/or social distance were he to be released from prison during the COVID-19 pandemic.[7]   Finally, the Court notes that Defendant's proposed release plan involves living with a family member just outside of Atlanta, Georgia, an area that has recently experienced a surge in COVID-19 cases.

For all of these reasons, juxtaposed with the fact that the BOP appears to have mitigated the COVID-19 outbreak at FCI Jesup, Defendant fails to carry his burden to demonstrate that compassionate release is appropriate at this time.   Defendant's compassionate release motion is therefore **DENIED**.[8]   ECF No. 395. In light of the § 3553(a) factors, to include the seriousness of the offense, the presence of a firearm, and the fact that Defendant has served less than half of the reduced sentence imposed by this Court, the Court does not find that a hearing and/or further expansion of the record is warranted at this time, and Defendant's request for the appointment of counsel is therefore **DENIED**.[9]

---

[7] While the Court commends Defendant for his documented efforts to work toward rehabilitation during his term of incarceration, his good behavior and pursuit of education in an institutional setting is insufficient to tip the scales in his favor based on the consideration of the record as a whole.

[8] This Court does not intend to downplay the seriousness of the COVID-19 pandemic, its impact on all aspects of life (inside and outside of prison), or its documented disproportionate impact on certain minority communities. However, the Court remains obligated to consider each compassionate release motion on its case-specific merits, and must be guided by the requirements outlined in the compassionate release statute and in 18 U.S.C. § 3553(a).

[9] As noted by the Government, Defendant does not have the right to the appointment of counsel in post-conviction proceedings, although counsel may

## B. Alternative Request for Home Confinement

To the extent Defendant's motion asks this Court to reduce his sentence to a term of home confinement pursuant to the Fair Sentencing Act and/or the CARES Act, such request must be denied because only the Attorney General/Bureau of Prisons have the authority to place an incarcerated inmate on home confinement under such laws. See United States v. Grady, No. 1:18cr113, 2020 WL 2569994, at *1 (W.D.N.C. May 21, 2020) (citing cases); see also United States v. Alan Lun Wai Ng, 378 F. App'x. 299, 301-02 (4th Cir. 2010) (noting that "the Bureau of Prisons is given sole authority to determine where an inmate will serve his or her sentence"); 18 U.S.C. § 3624(c). Accordingly, Defendant's motion is **DENIED** to the extent it asks this Court to allow him to serve the remainder of his sentence on home confinement.

Although Defendant's alternative request for home confinement is denied by this Court, nothing in this Order should be interpreted as discouraging the BOP from considering Defendant for CARES Act placement on home confinement. The Court notes that it lacks information as to the number of inmates from FCI Jesup that the BOP has placed on home confinement to reduce the likelihood of further spread of COVID-19. The decision to thin the inmate population at a given facility through application of the CARES Act appears to

---

still be appointed in certain circumstances when the interests of justice require the assistance of counsel.

require a <u>comparative analysis</u> of the inmates housed there as well as consideration of the ever-evolving conditions at such facility. Both such matters are best suited for the BOP to analyze and decide. Therefore, while this Court lacks authority to grant Defendant relief under the CARES Act, in light of Defendant's COVID-19 risk factors, the evolving state of the COVID-19 outbreak at FCI Jesup, and the recent updates to CDC guidance regarding the risk posed by age and certain medical conditions, the Court **RECOMMENDS** that the BOP evaluate or re-evaluate Defendant to determine whether he is a good candidate for placement on home confinement under the CARES Act.

The Clerk is **DIRECTED** to forward a copy of this Order to Defendant and to counsel for the Government.

**IT IS SO ORDERED.**

_____ /s/ 
Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
August __5__, 2020

11